**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION** ) ) ) ) ) | Master Docket: Misc. No. 21-1230 |
| ) | MDL No. 3014 |
| This Document Relates to: ) ) | |
| *Papsun v. Philips, et al.*, #23-1211 ) ) | |

**<u>MEMORANDUM OPINION</u>**

I.    <u>Introduction</u>

Pending before the court is a motion to remand this case to the Court of Common Pleas of Lehigh County, Pennsylvania ("state court") (Civ. No. 23-1211, ECF No. 7), with brief in support (ECF No. 8), filed on behalf of plaintiff Sherri Papsun ("Papsun"), the administratrix of her husband Darrell Papsun's estate. Philips RS North America LLC, Philips North America LLC, and Philips Holding USA, Inc. (collectively, "Philips"), filed a brief in opposition to the motion (ECF No. 9), with attachments.

The court scheduled oral argument for May 6, 2025. Counsel for Papsun and Philips agreed that Papsun's motion would be resolved by the court without oral argument (ECF No. 13). The court heard oral argument with respect to remand of other cases and requested additional briefing. (*See* Misc. # 21-1230, ECF Nos. 3336, 3345; Civ. No. 22-224, ECF No. 94). The motion is ripe for disposition.

II.    Procedural History

In the state court complaint, Papsun named as defendants three Philips-related entities, and four corporate entities related to B. Braun (collectively, "Braun"), which operated a plant to sterilize medical devices in Allentown, Pennsylvania.  Complaint ¶¶ 27-28.[1]  Papsun is a citizen of Pennsylvania.  Complaint ¶ 2.  Papsun alleges that each of the Braun defendants is a citizen of Pennsylvania.  Complaint ¶ 32.[2]

Philips removed Papsun's state court complaint to the United States District Court for the Eastern District of Pennsylvania.  Philips does not contest that Papsun and the Braun defendants are citizens of Pennsylvania or that Papsun can assert cognizable claims against the Braun defendants.  Instead, Philips' only argument is that the Braun defendants can be disregarded in the jurisdictional analysis because they were fraudulently misjoined.  *See* Notice of Removal, ECF No. 1 at 8, 11-19.

The Judicial Panel on Multidistrict Litigation transferred the case to this court for pretrial proceedings as part of the Philips MDL.  The case was assigned Civil Action No. 23-1211 in this court.  Papsun filed the pending motion for remand in this court on July 20, 2023 (ECF No. 7).

Deadlines regarding remand motions in the Philips MDL were extended several times by way of pretrial orders.  *See, e.g.* ECF Nos. 701, 1901.  On May 9, 2024, the court entered a Docket Management Order ("DMO") (ECF No. 2769), which, among other things, stayed resolution of pending remand motions until after the deadline to register for the personal injury settlement expired.  ECF No. 2769 ("10. If after the Registration Deadline, any cases remain for

---

[1] Papsun also named a fictitious John Doe defendant.  *See* 28 U.S.C. § 1441 (for purposes of diversity jurisdiction, "the citizenship of defendants sued under fictitious names shall be disregarded").

[2] Papsun alleged that Philips RS North America LLC is a citizen of Pennsylvania.  Philips introduced a declaration from James Durchak in response to a different remand motion in which Mr. Durchak stated that Philips RS is a citizen of Delaware and Massachusetts (Civ. No. 22-652, ECF No. 41-1).  The court need not decide the citizenship of Philips RS to resolve the pending motion.

which a Litigating Plaintiff has moved to remand to state court, the Court will set a schedule for those motion(s), including oral argument, following the Registration Deadline.").  The registration deadline was January 31, 2025.  The court held a consolidated oral argument on the numerous pending remand motions in the Philips MDL on May 6, 2025 (ECF Nos. 3249, 3250).

III.    Background

As set forth in the state court complaint, Darrell Papsun suffered debilitating pain and fatigue beginning in May 2021, became totally disabled in July 2021, and died at age 58 on October 3, 2022.  Complaint ¶¶ 36-40, 44.  He was diagnosed with acute myeloid leukemia ("AML").  Complaint ¶ 40.

Papsun alleges that the AML was caused by both Braun and Philips.  The complaint asserts that there were excessive emissions of ethylene oxide ("EtO") from Braun's factory in Allentown, Pennsylvania, and Darrell Papsun inhaled those emissions for many years because he lived in close proximity to the factory and frequented numerous nearby businesses.  The complaint asserts that Darrell Papsun's AML was directly and proximately caused, in part, by the excessive EtO emissions from Braun's factory.  Complaint ¶¶ 48-115.

The complaint alleges that Darrell Papsun's AML was also caused by Philips.  Darrell Papsun was prescribed a Philips DreamStation CPAP device beginning in May 2017 to treat his sleep apnea.  Complaint ¶ 124.  He used the device daily for multiple years until he developed the AML that caused his death.  *Id.*  The complaint alleges that his AML and resultant death were proximately caused by Philips.  *Id.* ¶¶ 126, 127-187.

The complaint asserts the following claims: (1) negligence against Braun; (2) strict liability against Braun; (3) public nuisance against Braun; (4) private nuisance against Braun; (5)

violation of Article 1 § 27 of the Pennsylvania Constitution against Braun; (6) strict liability –

defective design against Philips; (7) strict liability – failure to warn against Philips; (8) strict

liability – manufacturing defect and failure to adhere to quality controls against Philips; (9)

negligence against Philips; (10) breach of express warranty against Philips; (11) breach of

implied warranty against Philips; (12) [there is no count 12]; (13) survival action against Braun

and Philips; and (14) wrongful death against Braun and Philips.  (ECF No. 1-1).

IV.    Discussion – Fraudulent Misjoinder

Papsun argues that federal courts lack subject-matter jurisdiction over this case.  She

points out (and Philips concedes) that there is not complete diversity of citizenship between

plaintiff and defendants, because Papsun and the Braun defendants are citizens of Pennsylvania.

Philips invokes the "fraudulent misjoinder" doctrine and argues that the Braun defendants'

citizenship can be ignored because they were improperly named as defendants in the same

lawsuit as Philips in order to defeat removal.

A.  Legal standard

1.  General

This court will apply Third Circuit law with respect to the issues involving fraudulent

misjoinder and remand.  As explained in *In re Diet Drugs (Phentermine, Fenfluramine,*

*Dexfenfluramine) Products Liability Litigation*, 294 F. Supp.2d 667 (E.D. Pa. 2003):

> As an MDL court sitting within the Third Circuit, defendant Wyeth is correct that
> we must apply the fraudulent joinder standard of our Court of Appeals, not that of
> the Eleventh Circuit. *See In re Korean Air Lines Disaster*, 829 F.2d 1171, 1174
> (D.C.Cir.1987); *In re Ikon Office Solutions, Inc. Secs. Litig.*, 86 F.Supp.2d 481, 485
> (E.D.Pa.2000).

*Id.* at 672.

        2.   Removal

The court in *Contreras Madrid v. Walmart Stores East, LP*, No. CV 24-5229, 2025 WL

824124 (E.D. Pa. Mar. 14, 2025), discussed the standard for removal:

> A defendant in state court can remove a case to federal court if the federal court
> would have original jurisdiction over it. *See* 28 U.S.C. § 1441(a). "The removal
> statutes 'are to be strictly construed against removal and all doubts should be
> resolved in favor of remand.'" *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111
> (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d
> 1006, 1010 (3d Cir. 1987)).

*Id.*

When a case has been removed to federal court and fraudulent joinder is raised by the

remover, courts recognize that:

> The **removing party arguing fraudulent joinder has a "heavy burden** of
> persuasion." *Steel Valley Auth.*, 809 F.2d at 1012 n.6. **The district court must
> consider the complaint at the time the notice of removal was filed and accept
> all factual allegations in the complaint as true.** *Batoff v. State Farm Ins. Co.*, 977
> F.2d 848, 851–52 (3d Cir. 1992). Although a court cannot "step 'from the threshold
> jurisdictional issue into a decision on the merits,'" it can "look to more than just the
> pleading allegations" when ruling on a fraudulent joinder motion. *Briscoe*, 448 F.3d
> at 219 (quoting *Boyer*, 913 F.2d at 112). **Thus, a removing defendant can rely on
> "evidence outside the pleadings, including such supporting documents as
> affidavits and deposition transcripts."** *Yellen v. Teledne Cont'l Motors, Inc.*, 832
> F. Supp. 2d 490, 503 (E.D. Pa. 2011) (quoting Charles A. Wright & Arthur R.
> Miller, 14C <u>Federal Practice & Procedure</u> § 3723.1 (4th ed., Apr. 2021 update)).
>
> When deciding whether it has subject-matter jurisdiction, the Court's examination
> of the plaintiff's claims is less probing than on a motion to dismiss. *Batoff*, 977 F.2d
> at 852. Therefore, even if a party is not fraudulently joined, the claims against that
> party may ultimately be dismissed on a Rule 12(b)(6) motion. *Id.* Indeed, the
> fraudulent joinder analysis requires the court to ask only whether the claims are
> "**wholly insubstantial and frivolous**," and "**all doubts should be resolved in
> favor of remand**." *Id.* at 851–52.

*Id.* at *2 (emphasis added).

### 3. Fraudulent Joinder

With respect to fraudulent joinder, the applicable standard was recently summarized in

*Contreras*:

> A federal court has diversity jurisdiction where there is complete diversity—that is, no plaintiff is a citizen of the same state as any defendant—and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a); *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 150 (3d Cir. 2017). The doctrine of fraudulent joinder, however, allows a defendant to remove an action to federal court if a nondiverse defendant was joined solely to destroy diversity jurisdiction. *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009). Joinder is fraudulent if "there is **no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment**." *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)). If the court determines joinder was fraudulent, it "can disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.* (quotation and citations omitted). But if the court determines joinder was not fraudulent, it lacks subject matter jurisdiction and must remand to state court. *See* 28 U.S.C. § 1447(c).

*Id.*

### 4. Fraudulent Misjoinder doctrine

The fraudulent "<u>mis</u>joinder" doctrine is distinct from the fraudulent joinder doctrine.

Both doctrines "focus on the idea that the non-diverse parties were invalidly included for the

purpose of defeating diversity jurisdiction." *Brookside Banquets, LLC v. Selective Insurance

Co.*, No. CV2108832KMCLW, 2021 WL 6135940 *2 (D.N.J. Dec. 29, 2021). However,

"[f]raudulent joinder focuses on the merits, i.e., whether the plaintiff possesses a colorable cause

of action against the non-diverse defendant. Fraudulent misjoinder focuses on procedure, i.e.,

whether the claims against the diverse and non-diverse defendants, even if viable, may properly

be joined in the same action." *Id.*

The fraudulent misjoinder doctrine extends the reasoning of the fraudulent joinder doctrine another step. In *Alvarado v. Sweetgreen, Inc.*, 712 F. Supp. 3d 393 (S.D.N.Y. 2024), the court explained:

> So-called "fraudulent misjoinder" raises entirely different issues and presents entirely different problems. *See In re Propecia (Finasteride) Prod. Liab. Litig.*, 2013 WL 3729570, at *3 (E.D.N.Y. May 17, 2013). When a court is faced with a claim of "fraudulent misjoinder," it is not asked whether the claims that would defeat federal jurisdiction are fictive or are properly pled. The presumption of the doctrine is that the claims are properly pled; they seek relief from properly named defendants based on a properly alleged claim. *See id.*; *In re Prempro Prod. Liab. Litig.*, 591 F.3d at 620. Instead, the argument is that the claim that defeats federal jurisdiction should not have been joined with the claim that—were it pled alone— would have permitted federal jurisdiction. *See Nasca*, 2023 WL 5979210, at *8. But whether two claims are properly joined is, in the first instance and when the case originates, a question of state law, and not federal law.

*Id.* at 406.

The doctrine of fraudulent misjoinder "refers to a situation where a plaintiff attempts to frustrate a defendant's right to remove by joining a non-diverse party in violation of the applicable joinder rule." *Saviour v. Stavropoulos*, No. CV 15-5362, 2015 WL 6810856, at *6 (E.D. Pa. Nov. 5, 2015). In other words, the fraudulent misjoinder doctrine recognizes that the plaintiff may have valid claims against the non-diverse defendant (i.e., that complete diversity of citizenship is lacking), but argues those claims should be severed and remanded because there is no real connection between those claims and the claims the plaintiff asserts against the defendant seeking removal. *Saviour*, 2015 WL 6810856 at *6 & n.3. "Fraudulent misjoinder occurs when (1) a defendant has "no real connection" to the action in violation of the applicable permissive joinder rules, and (2) the violation is "so egregious as to constitute fraudulent joinder."" *Id.* (citation omitted).

The fraudulent misjoinder doctrine is controversial. "Thus far, the Eleventh Circuit appears to be the lone Circuit to have adopted the fraudulent misjoinder doctrine." *Nasca v. ByteDance, LTD*., No. 23-CV-02786, 2023 WL 5979210, at *8 (E.D.N.Y. July 27, 2023), report and recommendation adopted, No. 23CV2786, 2023 WL 7102396 (E.D.N.Y. Oct. 27, 2023) (citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996) (abrogated on other grounds)). In *Nasca*, the court explained:

> Not every instance of misjoinder is fraudulent and courts should only retain jurisdiction if the misjoinder is found to be "egregious." *A. Kraus & Son*, 2006 WL 1582193, at *5, 2006 U.S. Dist. LEXIS 37284, at *16 (quoting Tapscott, 77 F.3d at 1360). Upon a finding of fraudulent misjoinder, the court can sever the non-diverse parties and retain jurisdiction over the diverse parties. *Abruzzo Docg Inc*., 2021 WL 5304058, at *5, 2021 U.S. Dist. LEXIS 220196, at *19.

*Id.* "[T]he Court of Appeals for the Third Circuit has not recognized the fraudulent-misjoinder doctrine. The district courts in this circuit are divided on whether to adopt the rule." *Saviour*, 2015 WL 6810856, at *6.

### 5. Summary

Philips has a "heavy burden" and all doubts must be resolved in favor of remand. The remand standard is more deferential toward the plaintiff's claims than the motion to dismiss standard. In other words, the court may remand a case to the state court even if it believes the state court may dismiss the case for failure to state a claim. Here, Philips is not asserting a fraudulent joinder argument, but asserts fraudulent misjoinder. With respect to fraudulent misjoinder, assuming that doctrine were cognizable in the Third Circuit, it is Philips' burden to show: (1) Braun has no real connection to the action; and (2) the joinder violation is so egregious as to constitute fraudulent misjoinder.

B.  Application to this case

As in *Saviour*, this court does not need to decide if the Third Circuit Court of Appeals would recognize the fraudulent misjoinder doctrine.  Even assuming, *arguendo*, that the fraudulent misjoinder doctrine is viable, the court would not exercise its discretion to apply it under the circumstances of this case.

There is a general policy favoring permissive joinder of claims and parties.  As explained in *Patrick Collins, Inc. v. Does 1-18*, No. CV 11-7252, 2012 WL 13018259 (E.D. Pa. May 7, 2012):

> The underlying policy for permissive joinder is "to promote trial convenience and expedite the final determination of disputes." *Cooper v. Fitzgerald*, 266 F.R.D. 86, 88 (E.D. Pa. 2010) (quoting *Daraji v. Monica*, 2007 WL 2994608, at *10 (E.D. Pa. Oct. 21, 2007) (internal quotation marks omitted). Thus, the impulse under the Federal Rules is "toward entertaining the broadest possible scope of action consistent with fairness to the parties; **joinder of claims, parties and remedies is strongly encouraged**." *Hagan v. Rogers*, 570 F.3d 146, 152 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

*Id.* at *1 (emphasis added).

In considering fraudulent misjoinder, courts apply the relevant state law rule for permissive joinder as opposed to the federal rule.  *Nasca*, 2023 WL 5979210 at *8.  Philips notes that Pennsylvania's permissive joinder rule is "nearly identical" to the federal joinder rule.  (ECF No. 2565 at 13 n.6.  Pennsylvania Rule of Civil Procedure 2229 (Permissive Joinder) provides, in relevant part:

> (b) A plaintiff may join as defendants persons against whom the plaintiff asserts **any right to relief jointly**, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences **if any** common question of law or fact affecting the liabilities of all such persons will arise in the action.

Pa.R.C.P. No. 2229 (emphasis added).

In the state court complaint, Papsun alleges that Braun and Philips are joint tortfeasors and that both Braun and Philips are liable for causing Darrell Papsun's AML and death, even though their actions were independent of each other.  As explained in *Capone v. Donovan*, 480 A.2d 1249 (Pa. Super. Ct. 1984):

> If the tortious conduct of two or more persons causes a single harm which cannot be apportioned, the actors are joint tortfeasors even though they may have acted independently. Restatement (Second) of Torts § 879 (1977). See: *Pratt v. Stein,* 298 Pa.Super. 92, 150, 444 A.2d 674, 704–705 (1982); *Voyles v. Corwin,* 295 Pa.Super. 126, 130, 441 A.2d 381, 383 (1982); *Lasprogata v. Qualls,* 263 Pa.Super. 174, 179 n. 4, 397 A.2d 803, 805 n. 4 (1979).

*Id.* at 1251; *accord Rabatin v. Columbus Lines, Inc.*, 790 F.2d 22, 25 (3d Cir. 1986) ("Under Pennsylvania law, two actors are joint tortfeasors if their conduct "causes a single harm which cannot be apportioned ... even though [the actors] may have acted independently.").  "Most personal injuries are by their very nature incapable of division. Restatement (Second) of Torts § 433A, Comment i (1977)."  *Smith by Smith v. Kolcraft Prods., Inc.*, 107 F.R.D. 767, 770 (M.D. Pa. 1985) (quoting *Capone*).

Because this court must accept as true all factual allegations in the complaint, Braun is not a "throw in" defendant designed to defeat diversity.  To the contrary, Papsun asserts five substantive claims only against Braun.  Papsun's claims for wrongful death and the survivor action are asserted against both Braun and Philips.  Papsun alleges that Braun and Philips, albeit independently, caused the same personal injuries to Darrell Papsun, which allegedly are by their very nature incapable of division.  The timeframes of Darrell Papsun's exposure to EtO and the Philips CPAP device overlapped.  The decision to pursue the claims against Braun and Philips in a single action appears to be well within the permissive joinder rule and no basis was presented to the court which would support a finding that the decision was fraudulently made to avoid removal jurisdiction.  Papsun noted that if the cases were separate, she would likely face "empty

chair" defenses in each forum, with Braun and Philips blaming each other for Darrell Papsun's AML and death.  (ECF No. 8 at 5); *see Massaro v. Bard Access Sys., Inc.*, 209 F.R.D. 363, 369 (E.D. Pa. 2002) ("plaintiff motivation is to avoid the burden of prosecuting two claims arising from the same set of facts in two separate forums, particularly in light of the fact that each defendant, in separate forums, will likely point to the proverbial empty chair of the other defendant as the more culpable party.").

The court concludes that Papsun's decision to pursue claims against Braun and Philips in the same case is not "wholly insubstantial and frivolous."  *Contreras Madrid*, 2025 WL 824124 at *2.  Philips failed to meet its heavy burden to demonstrate that Braun was fraudulently misjoined.

V.    Discussion -- Severance

As alternative relief if the court determines that Braun was not fraudulently misjoined, Philips asks the court to sever and retain Papsun's claims against Philips as part of the Philips MDL.

A.  Whether the court has authority to sever

Federal Rule of Civil Procedure 21, entitled "Misjoinder and Nonjoinder of Parties," provides that "the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. The court is aware of its authority, in some circumstances, to sever claims and parties pursuant to Rule 21 to achieve diversity jurisdiction pursuant to *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989), *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420-21 (3d Cir. 2010), and *Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065 (3d Cir. 1979).

11

*Newman-Green* was a breach of contract case involving Venzualan defendants and one United States citizen domiciled in Venezuala, whose "stateless" status destroyed complete diversity.  The case was litigated for several years and resolved on the merits by the district court.  A jurisdictional challenge was raised for the first time on appeal.  The appellate court granted the plaintiff's motion to amend the complaint to drop the "jurisdictional spoiler" to preserve complete diversity.  *Id.* at 829.  The Supreme Court held that the appellate court had authority to cure the jurisdictional problem itself, rather than remanding for the district court to do so.  *Id.* at 833.  The Supreme Court observed that if the case was dismissed, the plaintiff could simply refile the suit and should not be compelled to jump through judicial hoops "for the sake of hypertechnical jurisdictional purity."  *Id.* at 837.  The Court "emphasize[d] that such authority should be exercised sparingly" in situations in which "the practicalities weigh heavily in favor" of exercising jurisdiction.  *Id.*  In exercising their discretion to sever, courts should consider whether dismissal of the nondiverse party would prejudice or provide tactical advantage to any party.  *Id.* at 838.

*Zambelli* similarly involved a situation in which the case had been fully litigated and the lack of diversity of citizenship caused by one LLC entity was discovered, for the first time, on appeal.  The Third Circuit Court of Appeals explained that "considerations of efficiency, fairness, and judicial economy weigh against a wholesale dismissal of the action at this stage." *Zambelli*, 592 F.3d at 420-21.  The court explained that those considerations were <u>particularly</u> relevant where the plaintiff originally filed the case in federal court and could obtain complete relief against a non-diverse defendant simply by refiling the case without the defendant that destroyed diversity.  *Id.*

*Publicker* was a breach of contract case originally filed in federal court by a distiller and its wholly-owned subsidiary against a bottle supplier. The district court dismissed the subsidiary to preserve diversity jurisdiction and ruled in favor of the defendant supplier after a bench trial. The plaintiffs, in an effort to avoid the adverse judgment, argued on appeal that the entire case should be dismissed due to the lack of complete diversity. In *Publicker*, the Third Circuit Court of Appeals explained that courts have some power to sever even if diversity is lacking:

> [Publicker] argues that if complete diversity is lacking, then the court has absolutely no jurisdiction over the action. We see this view of the district court's power under Fed.R.Civ.P. 21 as too restrictive. The court may dismiss a nondiverse party in order to achieve diversity even after judgment has been entered. *See Finn v. American Fire & Casualty Co.*, 207 F.2d 113 (5th Cir. 1953), Cert. denied, 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1069 (1954); *Wolgin v. Atlas United Financial Corp.*, 397 F.Supp. 1003 (E.D.Pa.1975), Aff'd without opinion, 530 F.2d 966 (3d Cir. 1976). And although the district court is precluded from retaining diversity jurisdiction by dismissing a nondiverse party if that party is indispensable under Fed.R.Civ.P. 19, it has not been contended that Continental is an indispensable party with respect to the claims between Roman and Publicker.

*Publicker,* 603 F.2d at 1069.

In each of those cases, the plaintiff filed the original complaint in federal court and there were extensive proceedings on the merits before the jurisdictional challenge was raised. This case, by contrast, involves removal jurisdiction of a case originally filed in state court. In *Saviour*, 2015 WL 6810856, the court commented:

> "[W]hile Rule 21 is routinely employed in cases that *began* in federal court, the federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent." *Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*, No. 14-cv-7153, 2015 WL 4508739, at *4 (S.D.N.Y. July 24, 2015) (quoting *Sons of the Revolution in New York, Inc. v. Travelers Indem. Co. of Am.*, No. 14-cv-03303, 2014 WL 7004033, at *2 (S.D.N.Y. Dec. 11, 2014)).

*Id.* at *5 (emphasis in original); *accord Klintworth v. Valley Forge Ins. Co.*, No. 17-CV-0448-, 2018 WL 4521219, at *2 (N.D. Okla. Sept. 21, 2018) ("[T]here is a difference between curing a jurisdictional defect and creating federal jurisdiction in the first instance."); *Nobers v. Crucible,*

*Inc.,* 602 F. Supp. 703, 709 (W.D. Pa. 1985) (remanding to state court where there was no original jurisdiction and distinguishing *Publicker* on the ground that the district court in *Publicker* had original jurisdiction).

The court need not resolve whether "frowning on severance" means that courts should, in all circumstances, treat removal cases different from cases originally filed in federal court.[3] Under the facts and circumstances of this case, even assuming the court has authority under Rule 21 to sever and retain the claims against Philips, it will decline its discretion to do so, for the reasons set forth below.

---

[3] There are at least three reasons given for prohibiting Rule 21 severance in all removal cases: (1) deference to the plaintiff's choice of forum, *see Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (plaintiff is "the master of the complaint," and controls whether to "establish—or not—the basis for a federal court's subject-matter jurisdiction," for example, by naming a defendant "from her own State and thereby destroy[ing] diversity of citizenship."); (2) the removal statute based on diversity of citizenship, 28 U.S.C. § 1441(b)(2), unlike 28 U.S.C. § 1332, contains a "forum defendant rule," *see In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 624 F. Supp. 2d 396, 409 (E.D. Pa. 2009) (Congress intended § 1441(b) to restrict federal jurisdiction and deemed defendants in cases involving a properly joined and served in-state defendant do not require access to the federal courts to avoid prejudice to out-of-state defendants); and (3) federalism/comity, *see Healy v. Ratta*, 292 U.S. 263, 270 (1934) ("Due regard for the rightful independence of state governments ... requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined").

On the other hand, it is questionable whether there is a principled difference between cases originally filed in federal court where subject-matter jurisdiction is lacking and removed cases where subject-matter jurisdiction is lacking. If in appropriate originally-filed cases subject-matter jurisdiction can be created after a court exercises its discretion under Rule 21, what difference does it make if the case is before the court due to original filing or being removed? Tthere may be additional factors for the court to consider in exercising its discretion under Rule 21 in removal cases, i.e., the plaintiff's choice of forum. Upon reflection, it would be hard to find that given analogous facts (i.e., a jurisdictional defect was discovered without the fault of either party after extensive proceedings were held), the decisions in *Newman-Green*, *Zambelli* and *Publicker* would have been different if those cases had been removed. In other words, it is possible that the federal courts retain discretion, in an appropriate case, to fix a jurisdictional error in a removed case. The Supreme Court's upcoming decision in *Hain Celestial Grp., Inc. v. Palmquist*, 145 S. Ct. 1960 (2025) may be instructive on this issue.

B.  Whether severance is warranted under the circumstances of this case

1.  Split of authority

There is a split of authority about whether, even if authorized, the court should sever

and remand non-diverse claims and retain jurisdiction over claims related to an MDL.  In

*Saviour*, 2015 WL 6810856, which involved removal of a similar case with a nondiverse

physician[4] and an MDL for an alleged defective medical device, the court outlined the

applicable analysis for severing a party pursuant to Rule 21 in order to preserve diversity

jurisdiction: "(1) the party to be severed must be dispensable; and if so, (2) the Court

must assess whether severing would prejudice any of the parties in the litigation."  *Id.* at

*4.

A minority of courts have severed claims against nondiverse medical parties under

contexts similar to this case.  In *Joseph v. Baxter International Inc.*, 614 F. Supp. 2d 868, 870

(N.D. Ohio 2009), as amended (May 27, 2009), the court denied a motion to remand with respect

to a pharmaceutical company involved in an MDL, but severed and remanded the claims against

nondiverse, dispensable medical providers.  *Accord Mayfield v. London Women's Care, PLLC*,

No. CIV.A. 15-19, 2015 WL 3440492, at *4 (E.D. Ky. May 28, 2015); *DeGidio v. Centocor,

Inc.*, Case No. 3:09CV721, 2009 WL 1867676, at *1 (N.D. Ohio June 29, 2009), as amended

(July 8, 2009).  These courts reasoned: (1) the nondiverse medical providers were not necessary

parties under Rule 19; (2) the nondiverse medical providers were not indispensable parties under

Rule 21; and (3) the inconvenience and prejudice to the pharmaceutical company outweighed the

prejudice to the plaintiffs.  In *Joseph*, the court recognized that fighting on two fronts would be

inconvenient and more expensive for the plaintiffs, but believed that settlement was more likely

---

[4] The court is aware that the nondiverse defendant in this case is an industrial entity, not a medical professional.  The allegations with respect to jointly-caused harm, however, are analogous.

if the case was part of an MDL and, even if the case did not settle, the plaintiffs would benefit

from the MDL process because they would not bear the burden of having to litigate on their own.

*Joseph*, 614 F. Supp. 2d at 873.

"These cases have not enjoyed broad support." *Hampton v. Insys Therapeutics, Inc*., 319

F. Supp. 3d 1204, 1214 n. 10 (D. Nev. 2018) (collecting decisions for the proposition the

minority view is wrong and not well-reasoned). The majority of courts refuse to sever those

kinds of claims and parties to create federal jurisdiction (even assuming they have authority to do

so). In *Slater v. Hoffman-La Roche Inc*., 771 F. Supp. 2d 524 (E.D. Pa. 2011), the court

explained:

> The Court declines to exercise its discretion to sever WKH and remand only
> plaintiff's claims against WKH to state court. Although severance and remand of
> the claims against WKH would benefit Roche because plaintiff's claims against
> Roche would remain in federal court and would be transferred to the MDL, and
> although the discovery relevant to the claims against WKH and Roche is not
> completely identical, the Court concludes that the potential prejudice to defendants
> if WKH is not severed is outweighed by the prejudice plaintiff will suffer if there
> is a severance. First, the Court is mindful of the deference to be afforded plaintiff's
> choice of forum. *See Delta Air Lines, Inc. v. Chimet, S.p.A*., 619 F.3d 288, 294 (3d
> Cir. 2010) ( "[A] plaintiff's choice of forum should rarely be disturbed.") (quoting
> *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419
> (1981)). Second, severance will prejudice plaintiff, who will be required to litigate
> in two different fora. Third, and most importantly, given the Court's determination
> that WKH, the Pennsylvania defendant, was not fraudulently joined, Roche's
> removal of the case was improper. Thus, severing and remanding only the claims
> against WKH would undermine 28 U.S.C. § 1441(b)'s prohibition on removal of
> cases involving forum defendants.

*Id.* at 530.

In *Saviour*, 2015 WL 6810856 at *4-6 (collecting decisions that refused to sever and

transfer claims to an MDL), the court concluded that the medical provider was a dispensable

party, but found that prejudice to the plaintiff outweighed the benefits of litigating in the MDL

and remanded the case to the state court. The court noted the deference to be afforded plaintiff's

choice of forum and the Supreme Court's admonition in *Newman-Green* that the authority to

sever a non-diverse party "should be exercised sparingly"—where "the practicalities weigh

heavily in favor of" preserving jurisdiction.  *Id.* (quoting *Newman-Green,* 490 U.S. at 837).  In

addition, the court noted that severance would be inconsistent with the heavy burden removing

defendants carry to show that a case is properly before the district court. *Id.* (citing *Brown v.*

*Jevic*, 575 F.3d 322, 326 (3d Cir. 2009)).  The court explained:

> Severing a non-diverse party at this stage of the litigation would be inconsistent with that burden.  Severing Stavropoulos upon the removal of the case "would circumvent the strict constraints of the removal statute and unduly expand diversity jurisdiction." *Id.* "[M]any defendants would likely attempt to seek this post-removal action by the courts in order to avoid meeting the burdens associated with fraudulent joinder.  Such a broad right would be inconsistent with the strict construction of the removal statute and the presumption in favor of remand." *Phillips v. R.R. Dawson Bridge Co., LLC*, No. 14-cv-00480, 2014 WL 3970176, at *5 (N.D. Ala. Aug. 12, 2014).

*Id.*

In *In re: Xarelto (Rivaroxaban) Products Liability Litigation*, No. 16-1066, 2016 WL

4409555, at *6–7 (E.D. La. Aug. 19, 2016), the court explained it refused to sever claims against

a nondiverse physician to retain jurisdiction and send the case to an MDL because there would

be common questions of law and fact to all the parties to the action, and the relative liability of

the parties was in question, i.e., the plaintiffs contended that the pharmaceutical defendants and

medical defendants were each responsible for the death of the patient.  The court commented that

the plaintiffs had "a strong strategic interest in playing these parties against one another at trial,

which weighs against dismissal."  *Id*. (citing *Newman-Green*, 490 U.S. at 837) (instructing that

courts should consider tactical advantages to severance/nonseverance).  The court noted that

severance would force the plaintiffs to litigate against an "empty chair" (i.e., if the cases

proceeded separately, each defendant would blame the other, absent defendant).  *Id.*  The court

was "cognizant of the deference owed to a plaintiff's choice of forum, especially where Rule 21 is being used to create jurisdiction rather than preserve it." *Id.*; *accord In re Heparin Prods. Liab. Litig.*, No. CIV. 1:10-HC-60195, 2011 WL 197967, at *1-2 (N.D. Ohio Jan. 18, 2011) (recognizing that severance to retain claims in MDL would have advantages, but declining to do so because "empty chair" may be severely prejudicial to the plaintiff where there was no tidy demarcation between claims, as in *Joseph*).[5]

### 2.  Application to this case

#### a.  Dispensable party

At the first step of the severance analysis, the court considers whether the Braun defendants are dispensable parties.  In *Joseph*, the court outlined the two-step analysis under Rule 19:

> I first assess under Rule 19(a) whether a party is necessary for just adjudication. A party is necessary if: "(1) complete relief cannot be given to existing parties in his absence; (2) disposition in his absence may impair his ability to protect his interest in the controversy; or (3) his absence would expose existing parties to substantial risk of double or inconsistent obligations." *Safeco Ins. Co., supra*, 36 F.3d at 546; Fed.R.Civ.P. 19(a).
>
> If the party is necessary, then, under Rule 19(b), I determine if he is indispensable by considering whether: 1) a judgment rendered in the party's absence would prejudice the available party; 2) such prejudice could be lessened or avoided; 3) a judgment rendered in the party's absence would be adequate; and 4) the plaintiff has an adequate remedy if the action is dismissed for nonjoinder. *Soberay, supra*, 181 F.3d at 764.

*Joseph*, 614 F. Supp. 2d at 872.  In *Joseph*, the court concluded that the medical defendants were not necessary because resolution of a claim against them would not necessarily resolve the claims against the medical device manufacturer (i.e., the medical malpractice claims differed from the products liability claims).  *Id.* at 872-73 (collecting decisions); *accord Saviour,* 2015 WL 6810856 at *4.

---

[5] *Heparin* and *Joseph* were decided by the same judge.

Rule 19 does not require the joinder of joint tortfeasors. *Talbot Underwriting Ltd. v. Nutra Food Ingredients*, LLC, No. 2:24-CV-258, 2025 WL 776177, at *3 (W.D. Pa. Mar. 11, 2025). The court will assume that the Braun defendants are dispensable parties, i.e., the Braun defendants are not necessary parties.

### b. Prejudice

At the second prong, the court considers prejudice to the plaintiff, including the tactical advantages and disadvantages of severance. There are considerations weighing on each side. On one hand, Papsun chose to file this case in the state court (and on the facts alleged could do so, as explained above). Courts should not lightly disregard a plaintiff's choice of forum. *Royal Canin*, 604 U.S. at 28. There will be common questions of fact and law about the damages caused by Braun and Philips. If forced to litigate in separate forums, Papsun could likely face "empty chair" defenses by both Braun and Philips.

On the other hand, the court recognizes that keeping the MDL-related aspects of this case could minimize duplicative discovery and the potential for inconsistent pre-trial rulings. Papsun timely opposed removal and sought remand early in the case, but the court stayed ruling on the motion for many of the reasons expressed in *Joseph*, i.e., the issue of fraudulent misjoinder, the availability of common resources and the likelihood of potential settlement.

The current status of the MDL weighs in favor of remand. The MDL is now largely resolved. The court approved class action settlements of the Economic Loss and Medical Monitoring claims.[6] Philips offered private settlements to plaintiffs who had certain qualifying injuries, as defined in the settlement.[7] On March 14, 2025, Philips placed $1.05 billion in a fund

---

[6] The court is not addressing whether Papsun is asserting any claims that may be impacted by those settlements.

[7] *See* Personal Injury Settlement Agreement, ECF No. 2678-1 at 4:
    Qualifying Injury means either a Qualifying Respiratory Injury or a Qualifying Cancer.

to settle those kinds of personal injury claims.  There were 35,746 claimants (ECF No. 3698).

Some claimants filed cases in state courts which were removed to federal court and transferred to

this court by the JPML; some claimants filed cases in other federal courts which were transferred

to this court by the JPML; and some claimants directly filed their cases in this court.  The

majority of the claimants did not file a lawsuit in court, but were listed on a census registry

established by the court at the joint request of Philips and plaintiffs' leadership counsel.[8]  The

settlement administrator expects all those settled claims to be paid by early 2026 (ECF No.

3698).

The record does not reflect that Papsun participated in the private settlement of personal

injury claims in the Philips MDL.  Thus, Papsun will be deemed a "litigating plaintiff" and,

unless the case is remanded, must comply with the requirements of the Docket Management

Order ("DMO") (ECF No. 2769).  This court previously explained:  "If the court agrees with a

plaintiff that the court lacks jurisdiction, that case will be remanded -- the plaintiff, however, will

---

Qualifying Respiratory Injury means, as demonstrated through proof of diagnosis or treatment,
respiratory impairment (e.g., new or worsening asthma, new or worsening COPD, chronic bronchitis, bronchiectasis, sarcoidosis, acute respiratory distress syndrome, reactive airways dysfunction syndrome, pulmonary fibrosis, pneumonitis, other interstitial lung disease, other obstructive or restrictive lung disease).
Qualifying Cancer means one of the following, as demonstrated through proof of diagnosis or
treatment: lung cancer; certain blood cancers (acute myeloid leukemia (AML), chronic myeloid leukemia (CML), or mucosa associated lymphoid tissue (MALT) of the air-pathway lymphoid tissue); or ENT/pathway cancers (e.g., oral cavity cancers; oropharynx cancer; nasal cavity/sinus cancer; nasopharynx cancer; larynx cancer; hypopharynx cancer; salivary cancer; esophageal cancers; thyroid cancers).

[8] In discussing the private settlement agreement for certain personal injury claims, plaintiffs' leadership counsel reported that there were over 58,000 registrants listed on the registry. (ECF No. 2768-1).

likely need to gather the evidence required by the DMO in any event. If the court determines that it may properly exercise jurisdiction over a case, the DMO deadlines will be enforceable and any plaintiff who fails to comply with those deadlines does so at his or her own risk." ECF No. 3249 at 6.

Philips reported to the court in a status report on November 17, 2025, that only 9 "litigating plaintiffs" complied with all the requirements of the DMO, two of whom are seeking remand (ECF No. 3718), although deadlines for some cases have not yet expired and there is potential for additional cases to be filed. Philips reports that there are 8 cases (including this one) in which motions to dismiss are pending (ECF No. 3718).

At this stage of the MDL, considering the few cases remaining, there may be few common issues other than general causation among those plaintiffs. Extensive discovery has already taken place and is available to all plaintiffs who comply with the amended stipulated protective order (ECF Nos. 765, 775). The benefit of keeping this case in the MDL to coordinate common discovery is largely moot, as that benefit has been achieved. If Papsun wants to access the repository of documents available to plaintiffs in the MDL, Papsun, if her counsel is a Participating Counsel (see ECF Nos. 491, 586), may do so. Philips, as demonstrated by the extensive litigation in the MDL, has the resources to litigate in a Pennsylvania state court.

Remand at this time does not foreclose Philips' ability to access a federal forum because Philips may seek severance after the case is remanded to the state court or Braun may successfully challenge the claims against it. *See Alvarado*, 712 F. Supp.3d at 411 ("A defendant who believes that two claims have been joined improperly for the purpose of defeating federal jurisdiction or, even if not joined for a fraudulent purpose, that the two claims will not survive in a single complaint, is not without recourse. She can still 'seek severance in state court, which

would render the propriety of subsequent removal to federal court straightforward.'"); 14C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3723.1 (2018 & Supp. 2025).

At this stage of the MDL, considerations of efficiency, fairness, and judicial economy (in addition to the policy to consider plaintiff's choice of forum) weigh in favor of remand. Papsun chose to file her case in the state court (and could properly do so, as explained above). Papsun timely opposed removal and sought remand. Papsun has not participated in extensive proceedings in the Philips MDL in this court, but may have the benefits of the extensive discovery already conducted in this case. If severance was granted, she would be forced to litigate the claims against Braun and Philips in separate forums. As Papsun noted, there would likely be "empty chair" defenses in each forum, with Braun and Philips blaming each other for Darrell Papsun's AML and death. (ECF No. 8 at 5). In the exercise of this court's discretion, Philips did not meet its burden to show that severance at this time is appropriate, and the court declines to sever the claims against Braun from the claims against Philips.

VI.    Counsel fees

Papsun seeks counsel fees associated with the response to Philips' notice of removal and preparation of the motion for remand. (ECF No. 8 at 5). Pursuant to 28 U.S.C. § 1447(c), the court "may" require Philips to pay just costs and any "actual expenses, including counsel fees, incurred as a result of the [improper] removal." In *Reuter v. Medtronics, Inc.*, No. 10-3019, 2010 WL 4628439 (D.N.J. Nov. 5, 2010), report and recommendation adopted, No. CIV.A. 10-3019, 2010 WL 4902662 (D.N.J. Nov. 23,

2010), the court declined to award costs and counsel fees in light of the uncertainty

surrounding the fraudulent misjoinder doctrine:

> The decision to award attorney fees rests within the broad discretion of the Court. *See Siebert v. Norwest Bank Mn*., 166 Fed. Appx. 603, 606–07 (3d Cir. 2006). In *Martin v. Franklin Corp* ., the Supreme Court indicated that an award for attorneys' fees under 28 U.S.C. § 1447(c) is appropriate only where the removing party lacks an "objectively reasonable basis" for removal. 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). Given the "confusion and uncertainty" regarding the fraudulent misjoinder doctrine, *Kaufman v. Allstate Insurance Company*, No. 07–6160, 2010 WL 2674130, at *7 (D.N.J. June 30, 2010), this Court cannot conclude that Defendants' removal was frivolous. *Martin*, 546 U.S. at 141. While this Court ultimately determines that remand is proper, there is no justification for an award of costs. It is therefore recommended that Plaintiffs should not be awarded fees pursuant to 28 U.S.C. § 1447(c).

*Id.* at *6.

In this case, by contrast, the court determined that Philips' reliance on the

misjoinder doctrine is misplaced, even in the unlikely event the Third Circuit Court of

Appeals would recognize the doctrine.  The permissive joinder of the claims against

Braun and Philips in the same case was not frivolous or egregious, but the issue of

severance under rule 21 raises complex issues and, even though the court declined to

exercise its discretion to sever under Rule 21, the issue was not frivolous.  Under those

circumstances, the case will be remanded and the recovery of reasonable counsel fees to

accomplish that result is not warranted.

VII.    Conclusion

For the reasons set forth above, the court concludes that Papsun did not fraudulently misjoin Braun and Philips in the state court complaint and declines to sever the claims against Philips.  Therefore, a federal court lacks subject-matter jurisdiction over this case. The motion to remand this case to the state court (ECF No. 7) will be granted.  Civil Action No. 23-1211 shall be remanded FORTHWITH to the Court of Common Pleas of Lehigh County, Pennsylvania.

An appropriate order will be entered.

Dated: December 10, 2025

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Court Judge